UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED

DEC 2 2 2016

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES OF AMERICA,  )
)
Plaintiff,  )
)
v.  ) No.
)
AYMAN Y. BARGHOUTY (aka "the Store  )
Man"), STEVEN J. HOLMAN, and  )
TIMOTHY Z. ZOLLNER (aka "Tim", aka  )
"T"),  )
)
Defendants.

**FILED UNDER SEAL**

# 4:16CR546 CDP/JMB

## INDICTMENT

## COUNT 1
### (Conspiracy to Commit Supplemental Nutrition Assistance Program Fraud)

The Grand Jury charges that:

## I.    Introduction

At all times relevant to this Indictment:

Parties

1.    Ayman Y. Barghouty, aka "the Store Man" (hereinafter "BARGHOUTY")

along with this wife, Maisoon Barghouty, owned and operated Express Lane Market, aka

"A&M Express Lane" and "A&M Inc" (hereinafter "Express Lane") located at 3846

Keokuk, St. Louis, Missouri 63116, within the Eastern District of Missouri.

2.    Steven J. Holman (hereinafter "HOLMAN") was employed at Express

Lane.

3.    Timothy Z. Zollner, aka "Tim", aka "T", (hereinafter "ZOLLNER") was

employed at Express Lane.

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| AYMAN Y. BARGHOUTY (aka "the Store | ) | **FILED UNDER SEAL** |
| Man"), STEVEN J. HOLMAN, and | ) | |
| TIMOTHY Z. ZOLLNER (aka "Tim", aka | ) | |
| "T"), | ) | |
| | ) | |
| Defendants. | | |

## INDICTMENT

### COUNT 1
**(Conspiracy to Commit Supplemental Nutrition Assistance Program Fraud)**

The Grand Jury charges that:

### I.      Introduction

At all times relevant to this Indictment:

> Parties

1.      Ayman Y. Barghouty, aka "the Store Man" (hereinafter "BARGHOUTY") along with this wife, Maisoon Barghouty, owned and operated Express Lane Market (hereinafter "Express Lane") located at 3846 Keokuk, St. Louis, Missouri 63116, within the Eastern District of Missouri.

2.      Steven J. Holman (hereinafter "HOLMAN") was employed at Express Lane.

3.      Timothy Z. Zollner, aka "Tim", aka "T", (hereinafter "ZOLLNER") was employed at Express Lane.

1

Background of the Supplemental Nutrition Assistance Program (SNAP)

4.      The United States Department of Agriculture (USDA) administers a

program called the Supplemental Nutrition Assistance Program (SNAP), formerly known

as the Food Stamp Program.  During all relevant times alleged herein the Food Stamp

Program and SNAP helped qualifying individuals and families buy food.

5.      SNAP benefits are typically issued to certified recipients and encoded

electronically onto Electronic Benefits Transfer cards (hereinafter referred to as "EBT

cards"). The Food and Nutrition Service (hereinafter "FNS"), an Agency of the USDA,

administers the SNAP. FNS delegates to individual states the task of determining

eligibility and certifying individual SNAP recipient's eligibility. Issued on a monthly

basis to eligible applicants, SNAP benefits permit the recipient to purchase only eligible

food items using EBT cards at FNS authorized retailers. The FNS authorizes certain

grocery retail stores to accept SNAP EBT cards from authorized recipients for eligible

food items. The SNAP EBT card system is a computer-based system through which the

SNAP benefit authorization is received from a central computer through the "point-of-

sale" (POS) terminal located at each individual retailer. When the recipient presents the

EBT card to the retailer to pay for eligible food items, the retailer uses the POS, which

electronically withdraws, or debits available SNAP benefits from the recipient's EBT

card and account. The grocery retailer later receives a bank deposit credit for the value of

the transaction in the retailer's designated business bank account. Payments to the grocery

retailer are made through the FNS system and are paid by the United States through

USDA appropriated funds.

2

6.     Grocery retailers must apply and be approved to participate in the USDA SNAP. If the retailer's application is approved, then an authorization packet is forwarded to the retailer. The packet includes an authorization letter, a copy of the applicable rules and regulations regarding the program, a training book, and a CD that also discusses the requirements of the SNAP. Those materials explicitly and clearly inform retailers that the only allowable use of SNAP EBT cards is for the SNAP recipient to  purchase food. Items that are ineligible for sale and receipt through the use of the EBT system include non-food sales such as: cigarettes, electronics, home decor goods, and cash exchanges. Authorized retailers are specifically notified that exchanging SNAP benefits for a discounted rate of cash known as "SNAP trafficking" and accepting food stamp benefits as payments on credit accounts is prohibited by both SNAP regulations and federal criminal statutes with penalties including prison.  Authorized retailers are also specifically notified that they cannot keep the SNAP EBT card, card number, or Personal Identification Number of any SNAP recipient.

7.     In order for a SNAP recipient to access their benefits to purchase eligible food items, the recipient must first present their EBT card to a FNS-licensed retailer. The retailer then swipes the EBT card through the store's POS, which records the EBT card number, date, time, and amount of the transaction. The recipient then enters their Personal Identification Number in order to execute a transaction. The store's POS can also be used to verify the amount of SNAP benefits available to the SNAP recipient.

II.     **The Conspiracy**

8.     Between about March 16, 2010, and continuing until about November 10, 2015, within the Eastern District of Missouri and elsewhere, the defendants BARGHOUTY, HOLMAN, and ZOLLNER, together and with others both known and

3

unknown to the grand jury, knowingly and intentionally conspired and agreed to defraud the USDA by using, acquiring and transferring SNAP and food stamp benefits in violation of Title 7, United States Code, Section 2024(b), all in violation of Title 18, United States Code, Section 371.

9.     The object of the conspiracy was for defendants BARGHOUTY, HOLMAN, and ZOLLNER to obtain and use the SNAP EBT cards of SNAP participants by allowing them to obtain merchandise at BARHOUGTY's store, Express Lane, and for defendants to use these SNAP EBT cards to make purchases of merchandise from stores that accepted the SNAP, including, but not limited to, Sam's Club, Schnuck's, Shop N Save, and Aldi's.

10.     To confirm that SNAP participants had SNAP benefits on their EBT cards, on some occasions, defendants conducted a balance inquiry on SNAP participants' EBT cards at Express Lane.

11.     At all times relevant to this indictment, ZOLLNER had a Sam's Club's membership. HOLMAN was an authorized user on ZOLLNER'S membership.

12.     At all times relevant to this indictment, on several occasions when ZOLLNER or HOLMAN used other SNAP participants' EBT cards to purchase merchandise at Sam's Club,   ZOLLNER or HOLMAN used ZOLLNER's Sam's Club membership to make purchases at Sam's Club.

## III.     Background to the Conspiracy

### Barghouty, Holman, and Zollner's Conspiracy

13.     Express Lane was an approved SNAP retailer from approximately April 26, 2010 through February 15, 2012.

14.     On or about March 28, 2012, Express Lane was permanently disqualified from the SNAP by the U.S.D.A. and prohibited from accepting EBT cards for payment or SNAP benefits.

15.     From approximately November 2006 through February 2015, ZOLLNER was a SNAP recipient.  On or about March 10, 2014, ZOLLNER completed and signed an application for SNAP and food stamp benefits and acknowledged and agreed that:

     a.     food stamp benefits were only for his household;

     b.     he could not sell, trade, or give away his food stamp benefits, Personal Identification Number, or EBT card;

     c.     he could not allow a retailer to buy his food stamps;

     d.     he could not use someone else's food stamp benefits or EBT card for his household.

## IV.     Manner and Means of the Conspiracy.

16.     It was further part of the conspiracy that from March 2010 through November 2015, BARGHOUTY, HOLMAN, and ZOLLNER obtained SNAP EBT cards from SNAP recipients and made illegal transactions using the SNAP EBT cards that they obtained from other SNAP participants.

## V.     Overt Acts

17.     In furtherance of the conspiracy, the defendants BARGHOUTY, HOLMAN, and ZOLLNER performed or caused to be performed the following acts within the Eastern District of Missouri:

     i.     During the period of this conspiracy, SNAP recipients provided their SNAP EBT cards to BARGHOUTY, ZOLLNER, or HOLLMAN to allow them to make illegal purchases.  In exchange, some SNAP recipients

5

could obtain items on credit from BARGHOUTY'S store, Express Lane. Some of the items that defendants purchased with these SNAP EBT cards included the type of merchandise that BARGHOUTY sold at Express Lane, including, but not limited to candy, chips, and meat.

ii.   From approximately March 2010 to November 2015, in violation of the SNAP, defendants illegally used SNAP EBT cards of others to purchase merchandise at SNAP retailers in the Eastern District of Missouri, including, but not limited to, Sam's Club, Schnuck's, Shop N' Save, and Aldi stores.

iii.  From approximately April 2012 to July 2013, after Express Lane was permanently disqualified from the SNAP, defendants checked the balances of SNAP EBT cards that did not belong to defendants, using an EBT processing machine, and subsequently made SNAP purchases at SNAP retailers during this time period.  On some occasions, defendants made SNAP purchases using other recipients' SNAP EBT cards  within a couple of days after  verifying the balances on these SNAP EBT cards at Express Lane, or on the same day that the balance was verified at Express Lane..

iv.   On or about February 1, 2012, balance inquires on two SNAP recipient's EBT cards were made at Express Lane and on the same day, two SNAP transactions were made at a Sam's Club in the Eastern District of Missouri using ZOLLNER'S Sam's Club membership.

v.    On or about March 31, 2013, BARGHOUTY had in his possession approximately 20 SNAP EBT cards that belonged to other SNAP recipients.

6

vi.   During the period of this conspiracy, ZOLLNER used SNAP EBT cards that belonged to other SNAP recipients, which were in BARGHOUTY's possession on or about March 31, 2013, to make purchases at Sam's Club under ZOLLNER'S Sam's Club membership. Some of these SNAP EBT cards belonged to the same SNAP recipients whose SNAP EBT cards BARGHOUTY had in his possession on or about March 31, 2013.

vii.   From in or about September 2010 to in or about July 2013, several SNAP purchases were made at Sam's Club using an Express Lane Sam's Club membership. A number of those transactions were completed using the accounts of SNAP recipients whose SNAP EBT cards were in BARGHOUTY'S possession on or about March 31, 2013.

viii.   On or about June 19, 2013, balance inquires on two SNAP recipient's EBT cards were made at Express Lane Market. Two days later, on or about June 21, 2013, ZOLLNER made two SNAP transactions at a Sam's Club and purchased approximately $379.53 of merchandise using these two SNAP recipients' SNAP EBT cards and ZOLLNER'S Sam's Club membership. ZOLLNER also purchased $235.74 of merchandise at Sam's Club on June 21, 2013 using two other SNAP recipient's SNAP EBT cards and ZOLLNER's Sam's Club membership. After making these purchases, ZOLLNER loaded the merchandise into BARGHOUTY's vehicle.

ix.   On or about October 8, 2015, HOLMAN purchased approximately $826.51 of merchandise at Sam's Club in the Eastern District of Missouri using SNAP EBT cards that belonged to four different SNAP recipients

7

and ZOLLNER's Sam's Club membership.

    x.    On or about November 4, 2015 and November 10, 2015, HOLMAN

purchased approximately $1,138.67 of merchandise at Sam's Club in the

Eastern District of Missouri using SNAP EBT cards that belonged to five

different SNAP recipients and ZOLLNER's Sam's Club membership.

All in violation of Title 18, United States Code, Section 371.

## COUNT II

### (SNAP and Food Stamp Fraud)

The Grand Jury further charges that:

18.    The Grand Jury re-alleges, as if fully set forth herein, all of the allegations

contained in paragraphs 1 - 17 in Sections I - V of Count I.

19.    On or about June 21, 2013, in the Eastern District of Missouri, and elsewhere,

### TIMOTHY ZOLLNER, aka "Tim", aka "T"

the defendant herein, knowingly acquired, and possessed SNAP and food stamp benefits

of a value of $100.00 or more, in a manner not authorized by Chapter 51, Title 7, United

States Code, Section 2024(b) in that defendant ZOLLNER acquired and possessed

approximately $615.27 of USDA SNAP and food stamp benefits that belonged to other

SNAP recipients and redeemed these SNAP benefits that belonged to others at a Sam's

Club in the Eastern District of Missouri, which is prohibited by statute and federal

regulations governing the Food Stamp Program and the SNAP.

In violation of Title 7, United States Code, Section 2024(b) and Title 18 United

States Code, Section 2, and punishable under Title 7, United States Code, Section

2024(b)(1).

8

## COUNT III

### (SNAP and Food Stamp Fraud)

The Grand Jury further charges that:

20.     The Grand Jury re-alleges, as if fully set forth herein, all of the allegations
contained in paragraphs 1 - 17 in Sections I - V of Count I.

21.     On or about December 17, 2014, in the Eastern District of Missouri, and
elsewhere,

**TIMOTHY ZOLLNER, aka "Tim", aka "T"**

the defendant herein, knowingly acquired, and possessed SNAP and food stamp benefits

of a value of $100.00 or more, in a manner not authorized by Chapter 51, Title 7, United

States Code, Section 2024(b) in that defendant ZOLLNER acquired and possessed

approximately $686.62 of USDA SNAP and food stamp benefits that belonged to other

SNAP recipients and redeemed these SNAP benefits that belonged to others at a Sam's

Club in the Eastern District of Missouri, which is prohibited by statute and federal

regulations governing the Food Stamp Program and the SNAP.

In violation of Title 7, United States Code, Section 2024(b) and Title 18 United States

Code, Section 2, and punishable under Title 7, United States Code, Section 2024(b)(1).

## COUNT IV

### (SNAP and Food Stamp Fraud)

The Grand Jury further charges that:

22.     The Grand Jury re-alleges, as if fully set forth herein, all of the allegations
contained in paragraphs 1- 17 in Sections I - V of Count I.

23.     On or about October 8, 2015, in the Eastern District of Missouri, and elsewhere,

9

**STEVEN HOLMAN**

the defendant herein, knowingly acquired, and possessed SNAP and food stamp benefits

of a value of $100.00 or more, in a manner not authorized by Chapter 51, Title 7, United

States Code, Section 2024(b) in that defendant HOLMAN acquired and possessed

approximately $826.51 of USDA SNAP and food stamp benefits that belonged to other

SNAP recipients and redeemed these SNAP benefits that belonged to others at a Sam's

Club in the Eastern District of Missouri, which is prohibited by statute and federal

regulations governing the Food Stamp Program and the SNAP.

In violation of Title 7, United States Code, Section 2024(b) and Title 18 United States

Code, Section 2, and punishable under Title 7, United States Code, Section 2024(b)(1).

## COUNT V

### (SNAP and Food Stamp Fraud)

The Grand Jury further charges that:

24.     The Grand Jury re-alleges, as if fully set forth herein, all of the allegations

         contained in paragraphs 1 - 17 in Sections I - V of Count I.

25.     On or about November 4, 2015 and November 10, 2015, in the Eastern District of

         Missouri,

**STEVEN HOLMAN**

the defendant herein, knowingly acquired, and possessed SNAP and food stamp benefits

of a value of $100.00 or more, in a manner not authorized by Chapter 51, Title 7, United

States Code, Section 2024(b) in that defendant HOLMAN acquired and possessed

approximately $1,138.67 of USDA SNAP and food stamp benefits that belonged to other

SNAP recipients and redeemed these SNAP benefits that belonged to others at a Sam's

10

Club in the Eastern District of Missouri, which is prohibited by statute and federal regulations governing the Food Stamp Program and the SNAP.

In violation of Title 7, United States Code, Section 2024(b) and Title 18 United States Code, Section 2, and punishable under Title 7, United States Code, Section 2024(b)(1).

A TRUE BILL.

_____
FOREPERSON

RICHARD G. CALLAHAN
United States Attorney

_____
ANTHONY L. FRANKS, #50217MO
Assistant United States Attorney

11